589 S.E.2d 527

**Sydney WALSH, Plaintiff Below, Appellant**

v.

**JEFFERSON MEMORIAL HOSPITAL, Defendant Below, Appellee.**

**Patricia McDowell, Plaintiff Below, Appellant**

v.

**Jefferson Memorial Hospital, Defendant Below, Appellee.**

**Nos. 31266, 31267.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 2003.

Decided Nov. 10, 2003.

Dissenting Opinion of Justice McGraw Dec. 10, 2003.

McGraw, J., dissented and filed opinion.

Robert J. Schiavoni, Hammer, Ferretti & Schiavoni and Garry G. Geffert, Martinsburg, for Appellants.

Rodney L. Bean, Vanessa L. Goddard, Steptoe & Johnson, Morgantown, for Appellee.

PER CURIAM:

This appeal consists of two cases involving actions seeking to collect unpaid earned and accrued fringe benefits as wages by invoking the provisions of West Virginia Code §§ 21–5–1 through 18, the West Virginia Wage Payment and Collection Act. The cases were consolidated for decision because they present identical challenges [1] to the grant of summary judgment by the Circuit Court of Jefferson County in orders dated July 12, 2002. Plaintiffs below and appellants herein, Patricia McDowell and Sydney Walsh (hereinafter collectively referred to as "Appellants"), were former employees of the defendant below/appellee herein, Jefferson Memorial Hospital (hereinafter referred to as "the Hospital"), who were not paid at the time they separated from employment with the Hospital for the sick leave they had accrued during the course of their employment. Appellants contend that they, rather than the Hospital, should have been awarded summary judgment because the personnel policies in effect

---

1. Although one of the cases contained issues related to liquidated damages and attorney fees, these matters were disposed of separately by the court below and are not subjects of this appeal.

at the time of their discharge from employment were ambiguous with regard to whether accrued sick leave benefits would be a paid severance benefit and such ambiguity is required by law to be resolved in favor of the employee. After careful and studied review of the issues raised, the documents filed and the arguments presented, we affirm the orders of the circuit court.

### I. Factual and Procedural Background

The facts in these cases are undisputed. Patricia McDowell was employed at the Hospital from June 1978 until September 2000. At the time of her separation from employment, Ms. McDowell had accrued 976.61 hours of unused sick leave. Sydney Walsh's employment with the Hospital began in April of 1979 and ended in May of 2000. Ms. Walsh had accrued 774 hours of unused sick leave at the time of her departure from employment with the Hospital.

At all times relevant to this appeal, the Hospital had a written personnel policy manual which, among other things, delineated the leave policy of the Hospital. While the manual was revised from time to time, the change having significance to this appeal is that made to the leave policy effective June 11, 1999. Before that date, the leave benefits outlined in the manual as available to employees included holiday, vacation, personal days and sick leave. While accrual of sick leave was unlimited, the former manual stated that "[u]nused sick leave will not be paid as a severance benefit." The June 11, 1999, manual established a single leave benefit called annual paid leave (hereinafter referred to as "APL") which by its terms replaced the provisions for accrual of the former types of leave, including sick leave.[2] Nevertheless, the Hospital's new policy allowed use of the sick leave employees had accrued under the old policy in certain situations.

After the hospital refused Appellants' requests for payment of sick leave which had

accrued under the former policy, Appellants each filed suit in the circuit court.[3] After discovery was completed, the parties filed cross motions for summary judgment. By orders dated July 12, 2002, the lower court granted the Hospital's motion for summary judgment and entered a final judgment in favor of the Hospital in both cases.[4] The July 12 orders form the basis of this consolidated appeal.[5]

### II. Standard of Review

■ The parties agree summary judgment was appropriate in this instance since there were no disputed material facts. Syl. Pt. 2, *Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978) ("A motion for summary judgment may only be granted where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."). The disagreement between the parties regarding the ruling below is limited to matters of law. Consequently, the "circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

### III. Discussion

■ As this Court has previously explained, " ' "[t]he West Virginia Wage Payment and Collection Act [hereinafter referred to as 'Act'] is remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld." Syllabus, *Mullins v. Venable,* 171 W.Va. 92, 297 S.E.2d 866 (1982).' Syl. Pt. 3, *Jones v. Tri–County Growers, Inc.,* 179 W.Va. 218, 366 S.E.2d 726 (1988)." Syl. Pt. 3, *Lipscomb v. Tucker County Com'n,* 206 W.Va. 627, 527 S.E.2d 171 (1999). Under the provisions of the Act, wages include "compensation for labor or services rendered" which may include accrued fringe benefits. W.Va.Code § 21–5–1(c) (1987) (Repl. Vol. 2002). The terms

---

**2.** The relevant provisions of the June 11, 1999, manual are quoted later in the discussion section of this opinion.

**3.** Ms. McDowell filed suit on April 23, 2001, and Ms. Walsh filed suit on May 21, 2001.

**4.** Both cases were argued before the lower court in one proceeding; however, the cases retained their individual status with a separate order entered for each case on the same date.

**5.** This Court granted and consolidated the appeals by orders entered on April 10, 2003.

of employment determine whether unused accrued fringe benefits are payable as compensation to employees upon separation from employment. *See* Syl. Pt. 5, *Meadows v. Wal–Mart Stores, Inc.,* 207 W.Va. 203, 530 S.E.2d 676 (1999).

■ The heart of Appellants' argument is that the terms of employment set forth in the Hospital's June 11, 1999, personnel policy manual created uncertainty about whether sick leave they had accrued under the previous personnel policy of the hospital was a benefit which was subject to payment as compensation under the Act. Appellants claim that the cause of the ambiguity was the deletion of the express provision in the former policy stating that unused sick leave would not be paid as a severance benefit. In furtherance of their argument, Appellants rely upon the provisions of syllabus point six of *Meadows,* which states:

> Terms of employment concerning the payment of unused fringe benefits to employees must be express and specific so that employees understand the amount of unused fringe benefit pay, if any, owed to them upon separation from employment. Accordingly, this Court will construe any ambiguity in the terms of employment in favor of employees.

207 W.Va. at 206, 530 S.E.2d at 679.[6] Appellants contend that because the terms of employment must be express and specific, in order to avoid ambiguity the Hospital had to include the statement excluding payment of unused sick leave as a severance benefit in its superseding policy. Appellants further contend that the ambiguity thus created was not resolved by the lower court's finding that the Hospital eliminated its entire sick leave policy because the new policy continued to refer to the accrued but unused sick leave. In response, the Hospital maintains that the lower court correctly ruled that the new policy was not ambiguous in this regard because there was no need to account for leave that no longer could be earned and accrued after the effective date of the new personnel policies.

Essential to our review of this matter is a close examination of both the June 11, 1999, personnel policy and the circuit court's specific ruling. The relevant portion of the personnel policy at issue states:

### ANNUAL PAID LEAVE POLICY

It is the policy of Jefferson Memorial Hospital to grant full-time and four-fifths time employees paid time off for days previously designated as holiday, vacation, personal days, illness, or non-work related injury according to an established system. This paid time off is designated as Annual Paid Leave (APL).

Following a provision explaining how APL accrues, the policy provides:

#### APL Carryover

Employees can carry a maximum of 240 hours forward to the next calendar year. APL balances in excess of these maximum amounts will not be allowed to carry over unless the needs of the hospital, in the hospital's determination, prevent the employee from taking time off. In such instances, the employee may be paid in lieu of receiving time off for all, or a portion of, the balance in excess of the maximum amount. Otherwise, all APL in excess of 240 hours will be paid to the employee at the end of the calendar year. Accumulated sick leave available to the employee prior to the effective date of this policy shall continue to be available to the employee after the employee has drawn down to an APL balance of 40 hours. This accumulated sick leave can only be used for employee illness.

In consideration of these policy provisions, the lower court determined that there was no ambiguity with regard to payment of the sick leave accrued under the former policy. The following excerpt from the July 12, 2002, orders provides the lower court's rationale for making this determination:

6. *Cf.* Syl. Pt. 2, *Lipscomb v. Tucker County Com'n,* 206 W.Va. 627, 527 S.E.2d 171 (1999) ("Where an employer prescribes in writing the terms of employment, any ambiguity in those terms shall be construed in favor of the employee.").

The Court rejects Plaintiff's argument that the new PPM [7] was ambiguous with respect to treatment of pre-June 11, 1999 accumulated sick leave under the new PPM. The entire policy was changed; further accrual of "sick leave" was abolished; the sick leave "banks" were frozen and accounted for separately. It was made clear in the new PPM that the new concept, "APL[,]" was a payable benefit. By stating: "This accumulated sick leave can only be used for employee illness[,]" the new PPM indicated clearly that the old sick leave "banks" were usable only in-kind and under restrictive conditions. When considered in conjunction with Hospital officials' contemporaneous explanations of the policy (including treatment of old sick leave "banks"), the Court agrees with the Hospital that it would have been superfl[u]ous to retain the statement, made in the old PPM, that "sick leave was not payable as a severance benefit" in the new PPM.

We agree with the conclusion of the lower court and appreciate the detailed reasoning provided by the court in its orders. We additionally observe that the language of the new policy makes it quite clear that the sick leave accumulated under the former policy is not the same as APL and actually operates somewhat in tandem with APL. Indeed, the new policy by its terms makes clear that sick leave accumulated under the former policy is not added to the new system of leave. Furthermore, the new policy expressly and specifically provides that the sick leave accumulated under the former policy "can only be used for employee illness." As defined by *Merriam Webster's Collegiate Dictionary* 812 (10th ed. 1995), when used as an adverb the word "only" means "a single fact or instance and nothing more or different." We concur with the circuit court's finding that the new policy language is not ambiguous or misleading as to whether sick leave accumulated under the former policy would be paid to departing employees and with the lower court's ultimate conclusion that compensation was not wrongly withheld. Finding no error

in its application of the law in these cases, we affirm the decision of the lower court.

For the reasons set forth, we affirm the July 12, 2002, orders of the Circuit Court of Jefferson County, granting summary judgment to Jefferson Memorial Hospital.

Affirmed.

Justice McGRAW dissents and files a dissenting opinion.

McGRAW, Justice, dissenting.
(Filed Dec. 10, 2003)

The lower court granted summary judgment for the hospital in this case in the face of what I believe to be an ambiguity in the new company leave policy. This Court has clearly stated that: "Where an employer prescribes in writing the terms of employment, any ambiguity in those terms shall be construed in favor of the employee." Syl. pt 2, *Lipscomb v. Tucker County Com'n.*, 206 W.Va. 627, 527 S.E.2d 171 (1999).

While it may be that a jury would have held against the plaintiff, a jury should have had the opportunity to hear this case. The lower court itself had to resort to a comparison of the old, rescinded policy with the new policy in order to reach its conclusion that the new policy was free of ambiguity. I believe a jury should have made this determination.

Also, it is important to note that the defendant, not the plaintiff, created the policy at issue. As this Court noted in *Lipscomb:*

> [W]e recognize that many West Virginians are employed by small businesses, with varying degrees of legal sophistication, most businesses with a handbook or written wage and hour policy are larger operations. These larger businesses have usually employed major law firms, full of capable and intelligent attorneys with a full command of the Queen's English, as well as schooling in the nuances of our employment law. It is with such professional assistance, often over a lengthy period of time, that these businesses craft carefully their employment policies and handbooks.

---

**7.** "PPM" is the lower court's abbreviation for personnel policy manual.

The employee, who usually does not have the benefit of professional legal training or advice, merely goes to work under the guidelines of the policy. He or she may receive a thick notebook of regulations, or may merely be told to read a posting, but the employee does not make the rules.

*Lipscomb v. Tucker County Com'n.,* 206 W.Va. 627, 631, 527 S.E.2d 171, 175 (1999). Because I believe that an ambiguity existed in this case and that a jury should have considered the issue, I must respectfully dissent.

Maynard, J., dissented.